**STATE of Maine**

v.

**Shawn P. HASKELL.**

Supreme Judicial Court of Maine.

Argued June 14, 1994.
Decided Aug. 3, 1994.

---

Jeffrey M. Silverstein (orally), Asst. Dist. Atty., Bangor, for the State.

G. Bradley Snow (orally), Tanous and Snow, East Millinocket, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Pursuant to 15 M.R.S.A. § 2115–A(1) (1980 and Supp.1993), the State appeals from an order of the District Court (Millinocket, *Gunther, J.*) granting defendant's motion to suppress evidence on a charge of operating under the influence ("OUI"). Late at night, when the nearby bars were closing, an East Millinocket police officer stopped defendant, who was driving 59 m.p.h. in a 55 m.p.h. zone. The District Court found that the traffic stop was pretextual. The State contends the court erred as a matter of law when it focused on the officer's intent to use the traffic stop to search for an impaired driver. Finding no error, we affirm.

The evidence presented at the suppression hearing may be summarized as follows: On August 11, 1993, a reserve officer worked the 1 a.m. to 7 a.m. shift for the East Millinocket Police Department. At 1:20 a.m., when the bars were closing, he drove along Route 157 near a local nightclub. In the vicinity of the club, he clocked defendant driving 59 m.p.h. in a 55 m.p.h. zone and stopped him. When he approached the car, he noticed that defendant's eyes were glassy and that he smelled of alcohol. He conducted field sobriety tests and arrested defendant for OUI. No speeding ticket was issued.

The officer testified that at night he stops all drivers for any motor vehicle infractions, including a defective plate light or driving one mile over the speed limit. He testified that he makes these stops because "[t]here are several local bars in the area. The time of night, the bars are usually letting out. It weighs in your decision, but it's not totally part of your decision." When asked whether he would have stopped the defendant in the afternoon for driving four miles over the posted limit, the officer stated that he could not answer that "hypothetical."

The District Court found that the stop was pretextual and granted defendant's motion to suppress the evidence. Specifically, the

court found that "if the practice is to stop at 59 in a 55, that better be the practice all the time, not just at night when you use it as an excuse to find a drunk driver;" the officer was looking for any reason to stop a vehicle driving late at night, "[a]nd he would not have done that at another time of day." In response to the State's motion for further findings of fact and conclusions of law, the court found "that the officer's practice during the daytime is to not stop speeders in the 1—4 m.p.h. over range. Late at night he stops for any violation, no matter how petty. The court finds that those stops are actually 'fishing expeditions' for OUI's."

The State does not challenge the factual findings of the court, but argues that it erred as a matter of law when it considered the officer's subjective intent, rather than applying a purely objective test. It contends that the case must be remanded for application of the appropriate test and for specific findings of what a reasonable officer would do.

 At the outset, we adhere to the use of the "reasonable officer" test articulated in *State v. Izzo*, 623 A.2d 1277, 1280 (Me.1993).[1] We do so based on the Fourth Amendment's proscription against unreasonable searches and seizures. The Fourth Amendment mandates that an officer have a reasonable articulable suspicion that a traffic offense is occurring before making a stop. A mere hunch will not justify a stop, and the officer's reasons for stopping the vehicle must not be a mere pretext or ruse. *Id.* A pretextual stop occurs when an officer uses a legal justification to stop a vehicle to search for evidence of an unrelated serious crime for which he did not have the reasonable articulable suspicion necessary to support a stop. *Id.* The

test is not whether the officer lawfully could have stopped defendant, but whether a reasonable officer would have made the stop absent the invalid purpose. *See id.; United States v. Guzman*, 864 F.2d 1512, 1517 (10th Cir.1988). This test recognizes that it is the departure from routine practice that makes the officer's conduct arbitrary, and it is the arbitrariness which violates the Fourth Amendment. 1 W. LaFave, *Search and Seizure*, § 1.4(e), at 94 (2d ed. 1987); *see also United States v. Deases*, 918 F.2d 118, 121 (10th Cir.1990), *cert. denied* 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991); *Guzman*, 864 F.2d at 1517.

 Having affirmed the use of the reasonable officer test, we next consider whether this case must be remanded for further findings consistent with the test. In *Izzo*, the officer became suspicious of defendant after he reacted oddly when the officer approached his vehicle to offer assistance. When defendant drove away, the officer noticed that the vehicle had a broken tail lens and inoperable plate light. He then stopped defendant for those violations, in accordance with his normal practice. *Izzo*, 623 A.2d at 1278. In affirming the denial of the motion to suppress, we noted that the suppression court found the officer would have made the stop regardless of his subjective suspicions. *Id.* at 1280. "Implicit in the court's finding that the stop was lawful is a finding that [the officer's] actions were those of a reasonable officer." *Id.* at 1280–1281. In the present case, it can be fairly inferred from the court's findings that the officer deviated from normal practice, and that a reasonable officer

1. We recognize that the reasonable officer approach is not followed uniformly. Some courts have held that a stop for a minor traffic infraction, which normally would not be enforced, is valid under the Fourth Amendment regardless of whether the detaining officer used the stop as a pretext to search for evidence of a serious and unrelated crime. *See e.g. United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993) (no pretextual stop where officer had probable cause to suspect traffic violation, regardless of subjective intent); *States v. Causey*, 834 F.2d 1179, 1185 (5th Cir.1987), *on remand* 835 F.2d 1527 (5th Cir. 1988) (arrest of bank robber under outstanding warrant for unrelated crime with sole intent to

question about robbery not pretextual); *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir. 1990), *reh'g denied en banc* (8th Cir.1991), *and cert. denied* — U.S. —, 112 S.Ct. 428, 116 L.Ed.2d 449 (1991) (where officer followed defendant then pulled over for failure to use turn signal, no pretextual stop despite officer's testimony that he would not have stopped the car absent suspicious activity). These decisions have been criticized as poorly reasoned; they place " 'the liberty of every [person] in the hands of every petty officer,' precisely the kind of arbitrary authority which gave rise to the Fourth Amendment." 1 W. LaFave, *Search and Seizure*, § 1.4(e), at 95 and supp. at 23 (citation omitted).

would not have made the stop absent the invalid purpose.

The entry is:

Order of suppression affirmed.

All concurring.