MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2016 ME 95
Docket:       Han-14-400
Argued:       October 7, 2015
Decided:      June 28, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

## STATE OF MAINE

v.

## JOHN E. SASSO

SAUFLEY, C.J.

[¶1]  John E. Sasso appeals from the judgment of conviction entered in the Unified Criminal Docket (Hancock County, *R. Murray, J.*) following his conditional plea of nolo contendere, pursuant to M.R. Crim. P. 11(a)(2), to the crime of operating after suspension (Class E), 29-A M.R.S. § 2412-A(1-A)(B) (2015).  Sasso argues that the court (*Mallonee, J.*) erred in denying his motion to suppress, contending that the officer's decision to stop his vehicle was pretextual and that the officer had no reasonable, articulable suspicion to justify the stop.  We affirm the denial of the motion to suppress and the judgment of conviction.

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the court's order denying Sasso's motion to suppress, the record supports the following facts.  *See*

2

*State v. Prescott*, 2012 ME 96, ¶ 2, 48 A.3d 218.  On March 28, 2014, an Ellsworth police officer, who was also part of an underage drinking task force, was on patrol. The officer watched Sasso, who was eighteen at the time, leave a convenience store, get into the driver's seat of a car, and drive away from the store.  The night was rainy, and the roads were wet.  The officer followed Sasso for a short distance and did not observe any problems with the operation of the vehicle.  He did, however, notice a problem with the brake lights on Sasso's car.  One of the brake lights appeared to be "stuck on."[1]  The officer described the problem of the brake light as "a safety violation."  He turned on his blue lights and effected a stop of Sasso's car.  Sasso pulled over without incident.  Sasso was driving with a license that had been suspended as a result of an OUI conviction, and he was arrested for operating after suspension.

[¶3]  Sasso was charged by criminal complaint with operating after suspension (Class E), 29-A M.R.S. § 2412-A(1-A)(B).  He entered a not guilty plea and moved to suppress the evidence obtained from the officer's stop of the vehicle, arguing that the stop was pretextual and that there was no reasonable, articulable suspicion to justify the stop.  Regarding the alleged pretext, Sasso

---

[1]  Sasso argued that although one of his taillights was much brighter than the other, causing the appearance that his brake light was stuck on, his brake light was not actually stuck on.  Whether or not the brake light was actually stuck on is irrelevant because the record supports a finding that at the time of the stop, the officer believed Sasso's brake light was stuck on and cited the offending brake light as the reason for initiating the stop.

argued that the officer thought that Sasso had purchased alcohol at the convenience store, and he hoped to find evidence of underage drinking by stopping the car.

[¶4]  Three people testified at the hearing on the motion to suppress: (1) the officer who stopped Sasso; (2) Sasso's mother, who confirmed that one of the taillights was a bit brighter than the other, perhaps because it was canted at a slightly different angle; and (3) another individual regarding a potential reason for the brighter taillight.  At the conclusion of the hearing, the court denied the motion. The court made very brief findings on the record, including the finding that "there's clearly something out of whack with this car."  The court made no explicit finding on pretext, determining that the State was correct that in these circumstances the officer's suspicion regarding underage possession of alcohol was "neither here nor there."

[¶5]  Neither party moved for further findings and conclusions.  *See* M.R. Crim. P. 41A(d).  Although Sasso had argued that the stop was pretextual, he did not seek specific findings at the hearing or seek further findings after the hearing.

[¶6]  Following the denial of the motion to suppress, Sasso entered a conditional plea of nolo contendere pursuant to M.R. Crim. P. 11(a)(2).  The court found Sasso guilty and sentenced him to the mandatory seven days in jail to be satisfied by completion of ten days in an alternative sentencing program, a $600

4

fine, and a one-year license suspension. Sasso then timely appealed. *See* 15 M.R.S. § 2115 (2015).

## II. OVERVIEW

[¶7] "The Fourth Amendment to the United States Constitution and article I, section 5 of the Maine Constitution protect motorists from being unreasonably stopped by police." *State v. LaForge*, 2012 ME 65, ¶ 8, 43 A.3d 961. For a traffic stop to be constitutional, "a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur." *State v. Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984 (footnote omitted). "Safety reasons alone can be sufficient" to support a stop "if they are based upon 'specific and articulable facts.'" *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989).

[¶8] A "pretext" challenge refers to an allegation that, although an officer has proffered a legal justification to stop a vehicle, the stop was effectuated for some unrelated purpose for which no articulable suspicion or probable cause existed. Sasso argues that, because there was no reasonable, articulable suspicion for the stop, the stop must have been pretextual. As set out in part IV of this opinion, we conclude that the officer did have a reasonable, articulable suspicion for the stop, and we move to the next question: whether the separate, subjective motivation of the officer renders a stop "unreasonable," even in circumstances

where there is a valid criminal, civil, or safety basis for the stop. For the following reasons, we conclude that it does not.

### III. PRETEXT

[¶9] In 1996, the United States Supreme Court addressed pretextual vehicle stops in *Whren v. United States,* 517 U.S. 806 (1996).[2] In *Whren*, District of Columbia vice-squad officers, operating in a "high drug area," observed a motor vehicle that was stopped at a stop sign. *Id.* at 808. Although they suspected drug trafficking activity, they had no initial basis, specific to that vehicle or its occupants, to stop the car. *See id.* The officers then observed the vehicle remain at the stop sign for an unusually long time, make a right-hand turn without a proper signal, and speed off at an unreasonable speed. *Id.* The officers stopped the vehicle, at which point they saw in plain view two large plastic bags of what appeared to be crack cocaine. *Id.* at 808-09. They arrested the motor vehicle's occupants. *Id.* at 809.

[¶10] The defendants in *Whren* argued that the stop was unconstitutional because the officers did not have probable cause[3] to believe that the vehicle's

---

[2] Although *Whren* was based on civil traffic violations of a municipal ordinance, *see Whren v. United States*, 517 U.S. 806, 810 (1996), the United States Supreme Court has indicated that its holding extends to criminal traffic violations as well, *see Ohio v. Robinette*, 519 U.S. 33, 38 (1996).

[3] We note that although the standard used by the officers to effectuate the stop in *Whren* was probable cause rather than a reasonable, articulable suspicion, the analysis regarding pretext applies uniformly. *See Whren*, 517 U.S. at 809.

occupants were engaging in drug-related activity, and the asserted basis for stopping the vehicle—the traffic violations—was pretextual. *Id.* They argued that because of "the temptation to use traffic stops as a means of investigating other law violations, as to which no probable cause or even articulable suspicion exists," the fact that the officers had probable cause to believe that the traffic infractions were occurring was not enough, and a different standard was necessary to analyze the situation. *Id.* at 810.

[¶11]  In a unanimous decision, the United States Supreme Court rejected this argument and upheld the stop. *Id.* at 819. It clarified that the constitutional reasonableness of traffic stops does not depend on the actual, subjective motivations of the individual officers involved. *Id.* at 813. When a stop is based on an objectively justifiable basis, a separate motive does not strip the officer's actions of the legal justification. *Id.* The Court specifically rejected the inquiry into the subjective motivation of the officer, stating: "Not only have we never held, outside the context of inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Id.* at 812.

[¶12]  The Supreme Court holding announced in *Whren* is consistent with Maine's standard for evaluating whether a traffic stop passes constitutional muster. In *State v. Haskell*, 645 A.2d 619, 621 (Me. 1994), decided before the Supreme

Court announced its decision in *Whren*, we described a pretextual stop as occurring "when an officer uses a legal justification to stop a vehicle to search for evidence of an unrelated serious crime for which he did not have the reasonable articulable suspicion necessary to support a stop."

[¶13]  Additional language in *Haskell* did, however, reference the officer's subjective motivation.  We stated in *Haskell* that "[t]he test is not whether the officer lawfully could have stopped defendant, but whether a reasonable officer would have made the stop *absent the invalid purpose*."  *Id.* (emphasis added).  Thus, *Haskell* could reasonably have been read to overlay a second test on the basis for the stop—in other words, even if the stop was undertaken on an objectively reasonable basis, the stop may be invalidated if the officer had a separate, *subjective* motivation for the stop.

[¶14]  We have, however, more recently clarified that the subjective motivation of the officer is not relevant on the ultimate determination of a reasonable, articulable suspicion, which requires an objective analysis.  As we announced in *State v. Bolduc*, decided after *Whren*, "[w]hether a reasonable police officer would *normally* have stopped [the defendant] . . . is not important to the analysis." 1998 ME 255, ¶ 6, 722 A.2d 44 (emphasis added); *see also State v. Taylor*, 1997 ME 81, ¶ 9 n.6, 694 A.2d 907.  Consistent with the standard established by the United States Supreme Court in *Whren*, the standard to be used

8

is whether an officer has "an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur." *Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984 (footnote omitted).

[¶15] In sum, to the extent that other language in *Haskell* suggested a different analysis, we now clarify that the officer's subjective motivation is not relevant to the determination of the reasonable, articulable suspicion necessary for a valid traffic stop. The critical analysis, even when pretext is asserted, requires an objective review of the basis for the stop. Thus, an illegal pretextual stop is one that occurs when an officer asserts an allegedly legitimate reason to stop a vehicle in order to obtain evidence of an unrelated crime when the officer did not actually have an objectively reasonable, articulable suspicion necessary to support a stop. *See Haskell*, 645 A.2d at 621.

[¶16] We note, however, that evidence of an officer's subjective motivation for a stop, seizure, or search may well be relevant on matters of credibility, observer bias, or context. Thus, the relevance of alleged pretext or subjective motivation, because it may bear on credibility of witnesses, context, or reliability of the evidence presented, will be determined on a case-by-case basis. *See* M.R. Evid. 401.

## IV. ANALYSIS

[¶17]  With that background, we review Sasso's challenges to the court's denial of his motion to suppress.  As always, we apply two standards of review to the denial of a motion to suppress evidence obtained as a result of an investigatory traffic stop.  *State v. Bilynsky*, 2007 ME 107, ¶ 16, 932 A.2d 1169.  We first determine whether the record supports the factual findings made by the motion court.  *State v. McPartland*, 2012 ME 12, ¶ 12, 36 A.3d 881.  We then "review de novo the motion court's conclusion that the officer's subjective suspicion was objectively reasonable as a matter of law." *Id.*

[¶18]  The court's findings on the record at the conclusion of the motion were very brief.  In ruling on a motion to suppress, "the court shall make findings of fact and conclusions of law either on the record or in writing.  If the court fails to make such findings and conclusions, a party may file a motion seeking compliance with the requirement."  M.R. Crim. P. 41A(d).  If no facts are found or the factual findings are not sufficient to disclose the basis for the court's decision, "the party responsible for an adequate record, the appellant, has the burden to request the court to make findings if none are made, or to expand on inadequate findings in order for the record to be meaningful for appellate review."  *State v. Izzo*, 623 A.2d 1277, 1281 (Me. 1993) (quotation marks omitted).

[¶19]   This responsibility is critical in the context of this appeal because neither party moved for further findings.  Thus, we "infer that the court found all the facts necessary to support its judgment if those inferred findings are supportable by evidence in the record."  *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003.  We "consider the evidence, and reasonable inferences that may be drawn from the evidence, in the light most favorable to the trial court's judgment to determine if the evidence rationally supports the trial court's decision."[4]  *Id.*  In other words, we assume that the court found facts necessary to support the denial of the motion.

[¶20]   The court believed the officer's testimony regarding the taillight malfunction and found that "there's clearly something out of whack with this car . . . . It's clear there's something irregular here."  It did not specify in its decision whether it found that the officer stopped Sasso's vehicle due to criminal conduct, a civil violation, or a threat to public safety.  Because the State did not argue that the malfunctioning brake light constituted a crime and did not offer or

---

[4]  Here, the court, in denying the motion to suppress, did not expressly find that the stop was initiated on an improper basis, such as a suspicion of underage possession of alcohol.  The court stated in its findings on the record: "Now, it may well be true that if he hadn't suspected underage drinking, he wouldn't have bothered to stop the car.  I think [the prosecutor] is right that that's neither here nor here."  Because, in the absence of a motion for further findings of fact, we "infer that the court found all the facts necessary to support its judgment," *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003, and we also read the facts in the light most favorable to the court's ultimate determination, *id.*, we assume that the court did not find that the officer's motivation rendered his testimony less than credible.

rely on the motor vehicle inspection regulations,[5] this record would not support a finding that the officer had an objectively reasonable, articulable suspicion that a crime or traffic infraction was occurring. Thus, the only finding that would provide a constitutional basis for the stop would be that the officer had a reasonable concern for the safety of the driver or the public. *See State v. Gulick*, 2000 ME 170, ¶ 14, 759 A.2d 1085.

[¶21] The record supports the court's inferred finding that the basis for the stop was an objectively reasonable, articulable suspicion of a threat to public safety. The record demonstrates that it was a rainy night and the light malfunction could confuse other motorists. The officer testified that the malfunctioning taillight was "a hazard for other people. They might see that and think the person's braking. Or the other light might be out." Thus, the court could determine that the officer had an objectively reasonable, articulable suspicion of a safety concern that supported the stop. *Cf. McPartland*, 2012 ME 12, ¶¶ 13, 17, 36 A.3d 881. Again, "[s]afety reasons alone can be sufficient if they are based on 'specific and articulable facts.'" *Pinkham*, 565 A.2d at 319. Given the officer's credited testimony describing a malfunctioning brake light on a dark and wet street, the safety concern was objectively reasonable. Furthermore, the court's finding that

---

[5] A malfunctioning brake light could preclude a successful inspection of a vehicle under Maine's inspection laws. *See* 9 C.M.R. 16 222 001-18 § 9 (2012).

any separate motivation was "neither here nor there" reflected its legally accurate conclusion that, even if the officer had a separate motivation for the stop, the objectively reasonable safety basis for the stop was sufficient to demonstrate that it was "reasonable" pursuant to the Fourth Amendment. The court did not err in denying the motion to suppress.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Ezra A.R. Willey, Esq., Willey Law Offices, Bangor, for appellant John E. Sasso

Matthew J. Foster, District Attorney, and Delwyn E. Webster, Asst. Dist. Atty., Prosecutorial District No. VII, Ellsworth, for appellee State of Maine

**At oral argument:**

Ezra A.R. Willey, Esq., for appellant John E. Sasso

Delwyn E. Webster, Asst. Dist. Atty., for appellee State of Maine