REC'D CUMB CLERKS OFC
JUN 7 '19 PM 2:12

STATE OF MAINE
CUMBERLAND, ss

UNIFIED CRIMINAL DOCKET
DOCKET NO. CUMCD-CR-18-30221

STATE OF MAINE

v.

ORDER ON MOTION
TO SUPPRESS

KANE HERRIE,

Defendant

The defendant seeks to suppress evidence obtained as a result of the stop of defendant on June 26, 2018 in Bridgton, Maine. The defendant argues that the officer lacked reasonable and articulable facts to justify the stop of defendant's car. For the following reasons, the motion is granted.

FINDINGS OF FACT

The court incorporates into this order the findings of fact made on the record at the conclusion of the hearing.

CONCLUSIONS OF LAW

In order to justify a brief investigatory stop, "the standard to be used is whether an officer has 'an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur.'" State v. Sasso, 2016 ME 95, ¶ 14, 143 A.3d 124; see State v. Simmons, 2016 ME 49, ¶ 8, 135 A.3d 824 ("A stop is justified when an officer's assessment of the existence of specific and articulable facts indicating a possible violation of the law or a public safety risk is objectively reasonable considering the totality of the circumstances."); State v. Brown, 1997 ME 90, ¶ 5, 694 A.2d 453 (quoting State v. Cusack, 649 A.2d 16, 18 (Me. 1994)) ("a police officer must have an articulable suspicion

1

that criminal conduct or a civil violation has occurred, is occurring, or is about to occur, and the officer's suspicion must be 'objectively reasonable in the totality of the circumstances.'") "An investigatory stop is valid when it is 'supported by specific and articulable facts which, taken as a whole and together with rational inferences from those facts, reasonably warrant the police intrusion.'" See State v. Taylor, 1997 ME 81, ¶ 9, 694 A.2d 907 (quoting State v. Hill, 606 A.2d 793, 795 (Me. 1992)). "The reasonable suspicion standard requires less than probable cause that a crime was being committed, but more than speculation or an unsubstantiated hunch." State v. Sampson, 669 A.2d 1326, 1328 (Me. 1996) (quoting State v. Caron, 534 A.2d 978, 979 (Me. 1987)).

Defendant relies on United States v. Sowards. 690 F.3d 583 (4th Cir. 2012). In Sowards, the officer stopped defendant's car for speeding based on the officer's visual estimate that the car was traveling 75 miles per hour in a 70 miles per hour zone. See Sowards, 690 F.3d at 585. On appeal, the court agreed with defendant that the stop of his vehicle was not supported by probable cause, which "exists if, given the totality of the circumstances, the officer 'had reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" Id. at 584-85, 588 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1946). The Sowards Court found that the officer had not been trained to estimate speeds and had difficulty with measurements. See Sowards, 690 F.3d at 589. The Court found that rather than being trained to estimate speeds, the officer had had the opportunity to guess at the speed of twelve vehicles and was able to guess within a total margin of error of 42 miles per hour for all of the vehicles. See id. at 588-89. The Officer's accuracy in guessing may have permitted the officer to pass the accuracy test but his margin of error could have been greater than the five miles per hour margin of error involved in the stop of Mr. Sowards. See id., 690 F.3d at 595.

2

In this case, Sergeant Jones testified that during his training, each cadet was required to estimate speed with a certified radar operator and had to estimate speed to a margin of plus or minus five miles per hour according to the radar while stationary. As in State v. Estes, however, although Sergeant Jones "implied that he met a certification standard requiring that he be able to make estimations falling within 5 miles per hour of the actual speed, he did not testify to the required accuracy rate." State v. Estes, 223 P.3d 287, 290 (Idaho Ct. App. 2009). The Estes court found that the officer did "not disclose whether certification required that he be able to meet that 5-mile-per-hour variance standard 65 percent of the time or 99 percent of the time, nor what his actual rate was . . . the trial evidence is void of any information at all on the officer's accuracy rate." Id.

Sowards involved a probable cause standard. See Sowards, 690 F.3d at 588. Estes involved a proof beyond a reasonable doubt standard. See Estes, 223 P.3d at 289. This case involves the lesser standard of reasonable articulable suspicion. During the very brief examination of Sergeant Jones at the hearing, he provided no information about the Maine Criminal Justice Academy's required accuracy rate or about his accuracy rate. Despite the low standard to be applied, the record reveals no objectively reasonable, articulable suspicion considering the totality of the circumstances that defendant was speeding. See Sasso, 2016 ME 95, ¶ 14, 143 A.3d 124; Simmons, 2016 ME 49, ¶ 8, 135 A.3d 824; Brown, 1997 ME 90, ¶ 5, 694 A.2d 453 (quoting Cusack, 649 A.2d at 18); Taylor, 1997 ME 81, ¶ 9, 694 A.2d 907 (quoting Hill, 606 A.2d at 795). Instead, on this record, with no objective basis on which to conclude that Sergeant Jones's estimate was accurate, the stop was based on speculation or an unsubstantiated hunch. See Sampson, 669 A.2d at 1328 (quoting Caron, 534 A.2d at 979).

3

The entry is

Defendant's Motion to Suppress is GRANTED. Evidence obtained as a result of the stop of Defendant's car on June 26, 2018 is SUPPRESSED.

Date: June 7, 2019

Nancy Mills
Justice, Superior Court

CUM UCD 18-30221

4