**STATE OF MAINE**
**CUMBERLAND, ss.**

MLRIS #213-21

4/22/21

STATE OF MAINE
Cumberland, ss, Clerk's Office

APR 27 2021

RECEIVED

**SUPERIOR COURT**
**UNIFIED CRIMINAL DOCKET**
**DOCKET NO: CR-19-2141**

**STATE OF MAINE,**

v.

**EMILLE QUIMBY**

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

)
)
)
)
)

Before the Court is Defendant's Motion to Suppress. The Defendant asserts he was subjected to an invalid pretextual stop and argues that evidence seized pursuant to that stop should be suppressed. For the forgoing reasons, Defendant's Motion is denied.

**I. Facts**

The following facts were presented at hearing before the Court on January 26, 2021. Officer Ernest MacVane is a patrol officer for the town of Windham. Officer MacVane was on duty on April 22, 2019. At approximately 7:00 p.m., he observed a pickup truck operate over the center lane. Officer MacVane initiated a traffic stop of the vehicle and identified the Defendant without incident. The Defendant testified that Officer MacVane informed him that the driver's side break light was inoperable. The Defendant testified that he showed him the brake light package and promised to fix it as soon as it stopped raining. Officer MacVane cleared the traffic stop and resumed his patrol.

Later that evening, at approximately 8:25 p.m., Officer MacVane drove past 613 Roosevelt Trail in Windham. Officer MacVane testified that he had previously been called to this area in response to drug activity, including overdoses, and suspected the residence at 613 Roosevelt Trail to be "a drug house." Officer MacVane testified that he observed a vehicle situated in the driveway

with the door open and the engine running. He suspected that the vehicle was at the residence to conduct illicit drug activity and chose to pull across the street in order to survey the situation. Officer MacVane testified that there were no lights on at the residence; he did not recall if there were other vehicles in the drive way; he did not know how long the car had been at the residence; and, at that time, he did not realize that this was the same vehicle and occupants that he had stopped earlier that evening.

After observing the vehicle for only a few minutes, Officer MacVane arranged to perform a "pretextual stop" of the vehicle and its occupants. His plan was to find a legitimate purpose to detain the Defendant; and, then use that legitimate purpose as a pretext to conduct an unrelated drug investigation. Officer MacVane testified that his pretextual plan involved dispatching a K-9 unit to the scene so that when Officer MacVane obtained a legitimate pretext to stop the vehicle, the K-9 could be deployed immediately to search for narcotics, while he performed the tasks associated with the unrelated pretext. Officer MacVane's testimony was clear: "I had everything in motion when I was in the driveway. . . . I had units moving to get in position before that car even left."

Officer MacVane followed the vehicle as it left 613 Roosevelt Trail. He observed the vehicle was drifting over the line; and, that the vehicle had an inoperable tail light. Officer MacVane testified: "I was going to use the traffic violation and the defect on the vehicle for the reason to stop the vehicle to further investigate drug involvement." Before he could initiate the traffic stop, however, the Defendant pulled into a gas station. Officer MacVane determined to further survey the vehicle and its occupants but his efforts were to no avail. He therefore initiated the traffic stop on the Defendant's vehicle before it left the gas station and the K-9 unit was deployed immediately.

Upon approaching the vehicle, Officer MacVane realized that it was the same vehicle and occupants he had stopped earlier that evening for minor traffic violations. While he engaged the driver and passenger, he was informed within minutes that the K-9 had alerted to the presence of narcotics in the vehicle. Indeed, narcotics were recovered and the Defendant was charged as a result.

The Defendant also testified at the Motion hearing. He stated that he had been hired to perform renovations to the residence at 613 Roosevelt Trail. He testified that but for the trip to the gas station which resulted in the first traffic stop by Officer MacVane, he had generally been at the residence since 7:00 a.m. that morning. A Google Maps image of the residence was submitted into evidence by the Defendant. The image, taken in June of 2019, shows a residence in need of repair, a tarp on the outside of the home, and a pile of scrap lumber in the yard.

## II. Discussion

This case encompasses recent Law Court decisions regarding Maine's approach to pretextual stops under Article I, Section 5 of the Maine Constitution and the Fourth Amendment to the United States Constitution. *See generally State v. Sasso*, 2016 ME 95, 143 A.3d 124. In keeping with Maine's primacy approach when addressing issues of constitutional law, the court will first address whether Officer MacVane performed a valid pretextual stop under the Maine Constitution. *See State v. Rowe*, 480 A.2d 778, 781 (Me. 1984).

### 1. Pretextual Stops – Maine Constitution

Article I, Section 5 of the Maine Constitution protects motorists from being unreasonably detained by police. *See State v. LaForge*, 2012 ME 65, ¶ 8, 43 A.3d 961. In order for a detention to be constitutional, "a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring,

or is about to occur." *State v. Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984 (footnote omitted). "[A]n illegal pretextual stop is one that occurs when an officer asserts an allegedly legitimate reason to stop a vehicle in order to obtain evidence of an unrelated crime when the officer did not actually have an objectively reasonable, articulable suspicion necessary to support a stop." *State v. Sasso*, 2016 ME 95, 143 A.3d 124.

Officer MacVane was unambiguous that his second seizure of the Defendant was pretextual and motivated solely by his desire to conduct a drug investigation. His decision to seize the Defendant was based on his observation that Defendant's vehicle was stopped in the driveway of 613 Roosevelt trail, an area known for illicit drugs, with the engine running and the car door open. Officer MacVane did not know how long the Defendant's vehicle had been there nor did he know how long the Defendant had been inside the residence. He assumed that the Defendant had been there only briefly because he suspected illicit drug activity. Based on these facts alone, at the time Officer MacVane determined to stop Defendant's vehicle, he was acting on nothing more than mere speculation or an unsubstantiated hunch that the Defendant was involved in illicit drug activity. To justify his pretextual seizure of the Defendant, Officer MacVane needed an objectively reasonable suspicion of some criminal act, civil violation, or threat to public safety, other than illicit drug activity.

While following the Defendant's vehicle, Officer MacVane observed: (1) the vehicle swerved into the center lane; and, (2) the vehicle had an inoperable tail light. With regard to the observation that the Defendant's vehicle swerved into the center lane, without more, even the most restrictive reading of *State v. Caron*, 534 A.2d 978 (Me. 1989) (finding an officer's suspicion after observing only one straddle of the center line to be a mere hunch or speculation, and not objectively

reasonable), does not justify an intrusive stop by a police officer. That leaves only the inoperable tail light to objectively justify Officer MacVane's pretextual seizure of the Defendant.

The Law Court has ruled unambiguously that an officer's subjective motivation to stop a vehicle is not relevant to determine whether an officer's stop of that vehicle was objectively reasonable. *See State v. Sasso*, 2016 ME 95, ¶ 14, 143 A.3d 124. Officer MacVane testified that he did not realize he had previously pulled over the Defendant that evening until after he had initiated the second traffic stop. Indeed, it would likely have been objectively unreasonable for Officer MacVane to stop the Defendant if he had. Although the Law Court has clarified that an officer's subjective intent is still admissible for the purpose of attacking credibility, there is nothing here to suggest that Officer MacVane's use of a pretextual stop implicates his credibility, no matter how distasteful the practice. *See Sasso*, 2016 ME 95, ¶ 16, 143 A.3d 124. Without more, the court cannot say that Officer MacVane's stop of the Defendant was objectively unreasonable because there was uncontroverted evidence that the Defendant's vehicle had an inoperable tail light. Moreover, the K-9 unit was deployed immediately after the stop was initiated and does not appear to have prolonged the traffic investigation. Accordingly, Officer MacVane appears to have performed a valid pretextual stop under the Maine Constitution, based upon the Law Court's opinion in *Sasso*.

The Defendant's attempt to distinguish *Sasso*, as well as the federal counterpart, *Whren v. United States*, is unavailing. 517 U.S. 806 (1996). The Defendant is correct that there is credible evidence showing that no illicit drug activity was afoot when Officer MacVane observed the Defendant's running vehicle. However, the lack of evidence supporting a pretextual suspicion is indeed the very motivation for an officer's use of this investigative technique. No matter how

attenuated or improper an officer's subjective motivation or suspicion may be, the Law Court has held that the officer's subjective motivation is irrelevant.

Additionally, the fact that alleged contraband was not in plain view is not a pre-requisite to the legality of a pretextual stop. Plain view is but one avenue for an officer to succeed in obtaining evidence of a suspected crime based on pretext, and it would appear that the K-9 alert here provided such success. Although the Law Court has not articulated specific standards in which a drug-dog search is permissible under Maine law, the Court has nonetheless held that dog-sniff searches place a minimal burden on privacy interests. *See State v. Phaneuf*, 597 A.2d 55, 57 (Me. 1991). Although there is some question as to how the use of a drug-sniffing dog might alter the analysis in a pretextual situation, the court is again without any indication that the Maine Constitution imposes any heightened restriction on the use of dog-sniff searches. *See generally State v. Ntim*, 2013 ME 80, 76 A.3d 370 (Silver, J., *concurring*, and Jabar, J., *dissenting*). Accordingly, the court cannot conclude that the pretextual stop was invalidated simply because the alleged contraband was not found in plain view.

### 2. Pretextual Stops – United States Constitution

The United States Constitution provides the minimum constitutional protections that must be observed. *See State v. Hawkins*, 261 A.2d 255, 257 (Me.1970). Accordingly, because the Law Court has not differentiated between the United States and Maine Constitutions regarding pretextual stops, there is no authority under the Fourth Amendment to the United States Constitution to invalidate Officer MacVane's pretextual stop.

### III. Conclusion

Officer MacVane unabashedly, purposefully and methodically used a pretextual stop in order to detain the Defendant and investigate criminal activity for which he lacked reasonable

articulable suspicion. Before making the stop, however, Officer MacVane was able to observe that the Defendant's vehicle had an inoperable tail light. Accordingly, this court is constrained to find that Officer MacVane performed a lawful pretextual stop of the Defendant's vehicle under the circumstances and case law presented.

Defendant's Motion to Suppress is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: April 22, 2021

MaryGay Kennedy, Justice
Maine Superior Court