STATE of Maine

v.

Jamie R. LITTLE.

Supreme Judicial Court of Maine.

Argued Sept. 6, 1983.

Decided Dec. 9, 1983.

Paul Aranson, Dist. Atty., Laurence Gardner (orally), Asst. Dist. Atty., Portland, for plaintiff.

Hewes, Culley, Feehan & Beals, John F. Lambert, Jr. (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

NICHOLS, Justice.

The central issue in this appeal is the constitutionality of a field sobriety test administered to the operator of a motor vehicle.

The Defendant, Jamie R. Little, was convicted of operating while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–B, following a jury-waived trial in Superior Court, Cumberland County. He contends on appeal that the trial court improperly admitted evidence obtained in the course of an allegedly illegal arrest or seizure. Finding no irregularity, we deny the appeal.

On February 22, 1982, at about 9:00 P.M., Police Officer Phillip White observed a motor vehicle moving unusually slowly, westbound, on Westbrook Street in South Portland. The automobile was weaving slightly from one lane to another; soon it came to a stop in the travelled portion of the street. Officer White stopped his police cruiser behind the automobile, put on his emergency lights and approached the vehicle. He observed the Defendant sitting in the driver's seat trying to restart his engine. When the Defendant rolled down his window, the officer could smell intoxicating beverage. The Defendant's eyes appeared glassy. When requested, he could not produce an operator's license. At that point, Officer White led the Defendant to the cruiser and asked him to perform certain "field sobriety" tests, such as walking heel-to-toe and touching his finger to his nose. The Defendant performed these actions in a manner that caused the officer to conclude that the Defendant was intoxicated and to place him formally under arrest.

When the Defendant was arraigned in District Court, Portland, he filed a motion to suppress certain evidence, including any evidence obtained from the field sobriety tests. After a hearing, the motion was denied. The Defendant's case was then

transferred to the Superior Court for trial, which culminated in his conviction.

██ The Defendant argues that he was effectively arrested before the field sobriety tests were administered, whereas probable cause for arrest arose only after the tests were completed. It is unnecessary for us to determine precisely when probable cause was established because the first part of the Defendant's argument lacks merit.

██ The only unsettled question relating to this officer's colloquy with the Defendant is whether the request to perform field sobriety tests transformed the stop into an arrest. There are times when a stop that becomes sufficiently intrusive on an individual's liberty may be deemed an arrest, even if the individual has not been formally taken into custody. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

██ The degree of intrusiveness inherent in a stop may be measured by how onerous, offensive or restrictive is the stop to the detainee, how coercive is the police conduct, and how reasonable is the detainee's expectation of privacy in the circumstances. The performance of a couple of quick, simple physical coordination tests is not particularly onerous, offensive or restrictive. Nor was the performance secured by undue coercion.[1] As for expectation of privacy, the mere operation of a motor vehicle imposes some intrusion on the operator's privacy. *See Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Officer White's requests of the Defendant certainly did not rise to the level of intrusiveness of the activity condoned as an investigatory stop in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)

where the officer grabbed the defendant, spun him around and frisked him.[2]

██ Even though the administration of the field sobriety tests was part of an investigatory stop rather than an arrest, it nonetheless qualifies as a "seizure," which must be "reasonable." Me. Const. art. 1, § 5; U.S. Const.Amend. IV; *Terry v. Ohio,* 392 U.S. at 16–20, 88 S.Ct. at 1877–1879. The reasonableness in general of the field sobriety tests is measured by balancing the level of intrusion on individual privacy against the particular law enforcement interests which would be served by permitting it on less than probable cause. *Michigan v. Summers,* 452 U.S. 692, 699–701, 101 S.Ct. 2587, 2592–2593, 69 L.Ed.2d 340 (1981); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The law enforcement interest that the tests serve is to help a police officer assess promptly the likelihood that a driver is intoxicated and to provide him with a reliable basis for making an arrest (as in the instant case), thereby preventing the driver from potentially killing or maiming himself or others. *See State v. Arsenault,* 115 N.H. 109, 336 A.2d 244, 246 (1975); McCormick et al., *Evidence* § 209 (2d ed.1972). To require probable cause for arrest before the tests could be administered would defeat their very purpose. The State's interest in conducting field sobriety tests on less than probable cause, therefore, substantially outweighs the resultant intrusion on individual privacy, which is slight indeed. Hence, as a general rule, the procedure is reasonable.

██ The reasonableness of the field sobriety tests given this Defendant depends on the existence at the time of an "articulable suspicion that [he] has committed or is

---

**1.** The District Court made a factual finding of absence of undue coercion. Such a finding may not be overturned if supported by reliable evidence. *State v. Adams,* 457 A.2d 416 (Me. 1983). The only hint of possible undue coercion in the record was testimony that the officer grasped the Defendant by the arm as the Defendant emerged from his vehicle; Officer White explained, however, that he did so be-

cause the Defendant had lost his balance and was about to fall.

**2.** *Cf. Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (stop became arrest when the defendant was detained in an interrogation room by the undue coercion of narcotics agents).

about to commit a crime." [3] *Florida v. Royer, supra,* —— U.S. at ——, 103 S.Ct. at 1324. *See also Terry v. Ohio, supra; State v. Rand,* 430 A.2d 808, 819 (Me.1981). After Officer White observed the Defendant driving in an erratic and unusual fashion, smelled liquor upon approaching him, noticed that his eyes appeared glassy and found that he could not produce a valid operator's license, the officer reasonably had such articulable suspicion.[4]

Therefore, the Defendant was not subjected to an illegal seizure or arrest, and there was no error in refusing to apply the exclusionary rule to the fruits of the seizure. *Accord, Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375 (1974).

The entry is:

Judgment affirmed.

All concurring.

---

3.  *Cf. State v. Landry,* 116 N.H. 288, 358 A.2d 661 (1976) ("specific and articulable facts" standard for stopping apparently drunk driver). This is "apparently the almost unanimous opinion of courts relating to drunk driving cases." 2 Erwin, *Defense of Drunk Driving Cases* § 32.04[ii] (3d ed. 1983).

4.  *Cf. Metzker v. State,* 658 P.2d 147 (Alaska App.1983) (stop not reasonable because driving not erratic).