MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2013 ME 66
Docket:        Pen-12-463
Submitted
 On Briefs:    May 30, 2013
Decided:       July 11, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## DUSTIN T. WHITE

LEVY, J.

[¶1]  Dustin T. White appeals from a judgment of conviction for operating a motor vehicle under the influence of intoxicants (OUI) with one previous OUI conviction within a ten-year period (Class D), 29-A M.R.S. § 2411(1-A)(B)(1) (2012), entered in the trial court (*Anderson, J.*) following a jury-waived trial. White challenges the court's (*Campbell, J.*) denial of his motion to suppress evidence on Fourth Amendment grounds, as well as the court's (*Anderson, J.*) application of the corpus delicti rule as modified by 29-A M.R.S. § 2431(4) (2012). We affirm the judgment.

## I.  BACKGROUND

[¶2]  Around 11:55 p.m. on August 5, 2011, a person phoned the Bangor Police Department to report seeing a green, drop-top jeep arrive at Carolina's bar, and that about an hour later, a man stumbled into the same jeep and drove away at

2

a high rate of speed.[1]  Police dispatch ran the license plate number they received in the report, which revealed that White was the registered owner of a vehicle with that license plate number, and that the vehicle registered to White was similar to the one described in the report.  Dispatch contacted Officer Steve Pelletier at 12:01 a.m., and Officer Pelletier proceeded to the address associated with White's license plate number and vehicle registration.  Officer Pelletier arrived at White's apartment complex about five minutes later and located a green jeep with no top and the license plate number from the report.  Officer Pelletier parked his vehicle in the parking lot near White's apartment building and walked to the steps in front of White's porch; at no point did Officer Pelletier use his blue lights.

[¶3]  Seeing a light on inside White's apartment, Officer Pelletier stepped onto the porch of the apartment.  Before Officer Pelletier could knock or ring a doorbell, White opened the door.  Officer Pelletier made no physical movements toward White, greeted him, and asked where he had been.  White replied, "downtown."  White stepped out onto the porch, momentarily pausing on one foot

---

[1]  We consider the facts in the light most favorable to the State.  *See State v. Holmes*, 2004 ME 155, ¶ 10, 864 A.2d 166.  The evidence presented in the suppression record is largely the same as that presented in the trial record, with two significant exceptions.  First, the suppression court received evidence and found that a man was seen stumbling toward the jeep and driving away, whereas the trial court did not receive evidence that a man was seen stumbling toward the jeep and made no finding to that effect.  Second, the trial court did not receive evidence related to the license plate number given by the identified caller because the caller was unavailable to testify at trial, and the parties stipulated only to the fact that the caller reported seeing a green, drop-top jeep leave Carolina's at a high rate of speed, after seeing the same green jeep arrive about an hour earlier.

to maintain his balance. As White stepped onto the porch, Officer Pelletier stepped off the porch to maintain his distance, so that the two were about ten feet apart.

[¶4] Officer Pelletier began taping their conversation and told White that he had received a report that White had driven while intoxicated. White responded that that was unlikely because he "didn't exceed the speed limit." White admitted to consuming at least four alcoholic drinks at two bars that night, including at Carolina's. White stated that he had been home for fifteen minutes and had not consumed any alcohol since returning home. Officer Pelletier noticed that White's speech was slurred, and he asked White to rate his level of impairment "on a scale of one to ten, one being totally sober and ten being falling-down drunk." White rated himself a "two."

[¶5] Officer Pelletier asked White to perform field sobriety tests, and White initially resisted, to which Officer Pelletier responded, "It doesn't matter." Officer Pelletier explained in his testimony that at that point, he believed he had "enough to take [White] in if he didn't want to do any tests," and that he would have done so if White had refused to take a sobriety test. However, White agreed to submit to a horizontal gaze nystagmus (HGN) test. Officer Pelletier stood over White and administered an HGN test while White sat on the porch steps. Officer Pelletier detected five out of six indicators of impairment, suggesting that White was impaired by alcohol. While conducting the HGN test, Officer Pelletier further

4

noticed the smell of alcohol coming from the direction of White's face and observed that White's eyes were bloodshot. Following the HGN test, White refused to perform any additional field sobriety tests. At some point, Officer Pelletier felt the engine hood of White's jeep, and it was warm. In its entirety, the interaction between Officer Pelletier and White lasted fifteen minutes.

[¶6]  Officer Pelletier arrested White for operating under the influence and took him to the Bangor Police Department. At the police station, an intoxylizer test revealed that White had a 0.20 blood-alcohol level. White was charged with criminal OUI (Class D), 29-A M.R.S. § 2411(1-A)(B)(1), based on his operation of a motor vehicle while under the influence of intoxicants or with a blood-alcohol level greater than 0.08, and his having a previous OUI conviction within the last ten years.

[¶7]  White moved to suppress the evidence of his HGN test and the events that followed, alleging that he was, in effect, under arrest when Officer Pelletier administered the HGN test, and that the arrest was unlawful. The court (*Campbell, J.*) denied the motion after a hearing. The court found that at the point in time that Officer Pelletier asked White to submit to an HGN test, White was subject to an investigative detention, but was not under arrest, and that Officer Pelletier had a reasonable and articulable suspicion to support his decision to subject White to sobriety testing.

[¶8] After a jury-waived trial, the court (*Anderson, J.*) found beyond a reasonable doubt that White drove a motor vehicle that evening. It based this finding on White's statement to Officer Pelletier that he had not been speeding that night, and Officer Pelletier's testimony that the hood of White's jeep was warm to the touch when Officer Pelletier located it at White's apartment. The court also concluded beyond a reasonable doubt that White was under the influence at the time he drove. White was convicted of operating under the influence and received a sentence of seven days in jail, a $700 fine, and a three-year suspension of his right to operate.

## II. DISCUSSION

[¶9] White contends that the court erred in (A) denying his motion to suppress evidence obtained during what he contends was an unlawful arrest, and (B) interpreting and applying the corpus delicti rule. We consider each contention in turn.

## A. Motion to Suppress

[¶10] "We review a denial of a motion to suppress for errors of law or clearly erroneous findings of fact." *State v. Langlois*, 2005 ME 3, ¶ 6, 863 A.2d 913 (quotation marks omitted).

[¶11] The State does not dispute the trial court's determination that White was subject to a "seizure" for purposes of the Fourth Amendment at the point in

6

time that Officer Pelletier asked White to submit to an HGN test. "A seizure of the person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen such that he is not free to walk away." *State v. Cilley*, 1998 ME 34, ¶ 7, 707 A.2d 79 (quotation marks omitted). Consistent with the suppression court's findings, a person in White's position when Officer Pelletier administered the HGN test would not have felt free to leave. Accordingly, White was subject to a "seizure" for purposes of the Fourth Amendment. *See id.*

[¶12] The question presented by this appeal is not whether White was seized, but whether his seizure was reasonable. *See* U.S. Const. amend. IV; Me. Const. art. I, § 5. A seizure is reasonable if made pursuant to an investigative detention based on reasonable suspicion of criminal activity, or if made pursuant to an arrest based on the higher standard of probable cause that a crime has been committed. *See State v. Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54; *State v. Donatelli*, 2010 ME 43, ¶ 11, 995 A.2d 238; *State v. Forsyth*, 2002 ME 75, ¶ 10, 795 A.2d 66. White does not contend that Officer Pelletier did not have reasonable suspicion to subject him to an investigative detention. Rather, White contends that he was subject to an arrest without probable cause when Officer Pelletier asked him to submit to an HGN test.

[¶13] "[T]here is no bright line that distinguishes an investigative detention from an arrest." *Donatelli*, 2010 ME 43, ¶ 12, 995 A.2d 238. For a detention to qualify as merely investigative, it must be "limited in scope and executed through the least restrictive means." *Id.* (quotation marks omitted). During an investigative detention, an officer may take action "reasonably related in scope to the circumstances which justified" the detention, but such a detention may rise to the level of a de facto arrest when an officer takes actions during the detention that "exceed what is necessary to dispel the suspicion" that led to the detention. *Id.* ¶ 12 (quotation marks omitted). In evaluating whether police actions have exceeded what is necessary, we weigh "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Id.* ¶ 13 (quotation marks omitted).

[¶14] The State has an "undeniably strong interest in protecting the public from the threat of drunk drivers." *State v. Kent*, 2011 ME 42, ¶ 11, 15 A.3d 1286 (quotation marks omitted). When Officer Pelletier asked White to submit to an HGN test, his seizure advanced this interest because Officer Pelletier had a reasonable suspicion that White had driven while intoxicated. Additionally, the intrusion on White's liberty interests was minimal: Officer Pelletier arrived at White's apartment without using his blue lights, walked to White's porch steps,

maintained his distance throughout his conversation with White, and did not physically restrain White in any way. Officer Pelletier's entire interaction with White lasted only fifteen minutes. Furthermore, an HGN test is a common and accepted form of investigating whether an individual may be impaired. For these reasons, Officer Pelletier's actions were reasonably related in scope to the circumstances justifying the investigation of drunk driving, were executed through the least restrictive means, and therefore did not amount to a de facto arrest. *See Donatelli*, 2010 ME 43, ¶¶ 12-13, 995 A.2d 238. Thus, Officer Pelletier did not need probable cause to detain White at the time he administered the HGN test. *See Flint*, 2011 ME 20, ¶ 9, 12 A.3d 54.

[¶15] Moreover, even if before White's formal arrest his seizure had amounted to a de facto arrest, Officer Pelletier would have had the requisite probable cause. The evidence before the suppression court showed that Officer Pelletier had a report from police dispatch, obtained from an identified caller, that a man stumbled into a green, drop-top jeep outside of a bar and drove away; the caller identified the jeep by its license plate number; police investigation revealed that the license plate number was registered to White for a vehicle with similar characteristics; and minutes after receiving the report, Officer Pelletier found a green jeep with the license plate number reported by the caller and its drop-top down parked outside White's apartment. Further, Officer Pelletier observed White

have difficulty maintaining his balance; heard White slur his words; and heard White admit that he had had four alcoholic drinks that night, had not been drinking in the fifteen minutes he had been home, and was a "two" on a one-to-ten scale of impairment. These facts established probable cause that White drove a motor vehicle while intoxicated.

[¶16] Because White was not subject to an unlawful arrest, the requirements of the Fourth Amendment were honored, and the court did not err in denying White's pre-trial motion to suppress evidence obtained during and after the HGN test. *See Langlois*, 2005 ME 3, ¶ 6, 863 A.2d 913.

B.    Corpus Delicti

[¶17] White next argues that the court violated the corpus delicti rule by treating his statement to Officer Pelletier as sufficient to prove that he operated a motor vehicle.

[¶18] "Corpus delicti" is Latin for "body of the crime." Black's Law Dictionary 395 (9th ed. 2009). The corpus delicti rule is a rule of common law that serves to "prevent a conviction when no crime has in fact occurred." *State v. Reed*, 676 A.2d 479, 481 (Me. 1996). It requires that "before a defendant's self-inculpatory out-of-court statement may be admitted in evidence and considered by the fact-finder," the State must show, by a low standard of proof similar to the probable cause standard, "that the crime charged has been committed

by some person." *State v. Fundalewicz*, 2012 ME 107, ¶¶ 8-9, 49 A.3d 1277 (quotation marks omitted). However, the corpus delicti rule is modified by 29-A M.R.S. § 2431(4) for proceedings involving OUI charges pursuant to 29-A M.R.S. § 2411 (2012). A defendant's voluntary statement "that the defendant was the operator of a motor vehicle . . . may constitute sufficient proof by itself, without further proof of corpus delicti, that [a] motor vehicle was operated by the defendant." 29-A M.R.S. § 2431(4). We review the court's factual findings for clear error and review de novo the determination of whether the evidence was "sufficient to establish a substantial belief" that a crime occurred. *State v. Michaud*, 1998 ME 251, ¶ 7, 724 A.2d 1222.

[¶19] Here, White told Officer Pelletier that he "didn't exceed the speed limit" that night. Although White argues that his statement can be interpreted to mean that he was not speeding because he was not driving, the court reasonably inferred that the statement was an admission of driving. White's statement was therefore sufficient to establish that he operated a vehicle without further proof of corpus delicti. *See* 29-A M.R.S. § 2431(4).

The entry is:

> Judgment affirmed.

_____

**On the briefs:**

Kirk D. Bloomer, Esq., Bloomer Law Office, P.A., Bangor, for appellant Dustin White

R. Christopher Almy, District Attorney, and Tracy Collins Lacher, Asst. Dist. Atty., Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2011-03051
FOR CLERK REFERENCE ONLY