MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 10
Docket:        Yor-22-90
Argued:        October 5, 2022
Decided:       January 26, 2023

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

STATE OF MAINE

v.

DOUGLAS E. WILCOX

LAWRENCE, J.

[¶1]  Douglas E. Wilcox appeals from a judgment of conviction for operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A)(1) (2022), entered by the trial court (York County, *Sutton, J.*) upon a conditional guilty plea entered after the court (*Moskowitz, J.*) denied Wilcox's motion to suppress evidence obtained through an Old Orchard Beach police officer's interactions with Wilcox in a convenience store parking lot.  Because we conclude that the officer's actions were constitutionally sound and that the court properly denied Wilcox's motion to suppress, we affirm the judgment of conviction.

## I.  BACKGROUND

[¶2]  On November 28, 2020, a police officer in Old Orchard Beach issued Wilcox a uniform summons and complaint alleging that he had operated under

2

the influence the previous night. The State charged Wilcox by complaint on December 18, 2020, with both operating under the influence, *id.*, and operating while license suspended or revoked (Class E), 29-A M.R.S. § 2412-A(1-A)(A)(1)-(4) (2022). Wilcox moved on multiple grounds to suppress all evidence obtained as a result of his interactions with the officer at the convenience store, including on the grounds that he was unlawfully seized based on an unreliable anonymous tip and was directed to perform field sobriety testing without being asked for his consent.

[¶3] The court held an evidentiary hearing on the motion. It heard testimony from the officer who interacted with Wilcox at the convenience store and admitted two videos from the officer's body and cruiser cameras.

[¶4] The officer testified to the following events,[1] most of which are also depicted in the two videos that were admitted in evidence at the suppression hearing.[2] The officer was dispatched to a particular 7-Eleven store on November 27, 2020, at about 10:20 p.m. The dispatcher informed the officer of

---

[1] The court explicitly found that the officer was a credible witness.

[2] Neither the State nor Wilcox contests the accuracy or authenticity of the video recordings admitted at the suppression hearing, and we may, in our appellate capacity, consider the recordings in their entirety as we review the court's findings and conclusions. *See State v. Athayde*, 2022 ME 41, ¶ 29, 277 A.3d 387; *State v. King*, 2016 ME 54, ¶ 3, 136 A.3d 366 (relying on a video recording played at a suppression hearing, in addition to the court's findings, when setting forth the facts of the case).

an anonymous report that a brown Honda had struck something and was now in the 7-Eleven parking lot. The person who made the report also conveyed a belief that the driver was intoxicated. When the officer arrived at the 7-Eleven, he found two brown Hondas—a car and a sport utility vehicle. After confirming with dispatch that the vehicle in question was a car, the officer approached the brown Honda car and found a man—later identified as Wilcox—crouched by the front driver's side of the car looking at the front tire. There was extensive damage to the driver's side of the vehicle, with bare metal and no rust. The trunk of the car was open.

[¶5] The officer asked Wilcox what was going on. When Wilcox did not respond and began to walk away toward the store with his hands in his pockets, the officer told him to stop, keep his hands out of his pockets, and come toward him. Wilcox said that he was "just going into the store real quick," but he walked toward the officer at the rear of his car, and the officer told him to have a seat on the rear of the trunk.

[¶6] The officer asked what had happened and where the accident had occurred, and Wilcox said that it had happened on the highway. He was disheveled and emotional, and was slurring his speech as if his tongue were too large for his mouth. The officer asked Wilcox questions about his health and

4

well-being, and Wilcox reported no injuries or ailments. The officer told Wilcox that he was going to conduct field sobriety tests and offered Wilcox no opportunity to decline. As a result of field sobriety testing, the officer conducted additional alcohol and drug testing.

[¶7] Based on the testimony and video recordings, the court found that, because the officer's observations were consistent with what the anonymous caller had said, the tip was sufficiently reliable for the officer to approach Wilcox. The court found that the police officer located the car parked in a dark area at the identified convenience store; noticed damage to the car, consistent with the report, after shining a light on it; and approached Wilcox in a friendly manner to ensure that he was okay and to see what had happened. The court concluded that Wilcox had not been seized until the officer asked him to complete field sobriety tests. It found that the officer had a reasonable articulable suspicion to justify the field sobriety tests because Wilcox's speech was slurred and there was damage to his vehicle.

[¶8] After the court denied his motion to suppress, Wilcox entered a conditional guilty plea to operating under the influence, and the court (*Sutton, J.*) entered a judgment of conviction on March 18, 2022. The court suspended Wilcox's license for 150 days and sentenced him to pay a $500 fine.

The court dismissed the other count with the agreement of the parties. Wilcox timely appealed from the judgment of conviction. *See* 15 M.R.S. § 2115 (2022); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶9] Wilcox argues that the court (*Moskowitz, J.*) should have granted his motion to suppress because the officer who interacted with him violated the Fourth Amendment to the United States Constitution[3] when he detained Wilcox at the convenience store, questioned him, and administered field sobriety tests.[4] We consider the constitutionality of both (A) the officer's initial detention of Wilcox for questioning and (B) his administration of field sobriety tests. "We review questions of constitutional interpretation de novo." *State v. Reeves*, 2022 ME 10, ¶ 42, 268 A.3d 281.

---

[3] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[4] Although Wilcox argues on appeal that we should interpret the Maine Constitution in accordance with the reasoning of the dissent in *Navarette v. California*, 572 U.S. 393, 404-14 (2014) (Scalia, J., dissenting), Wilcox did not argue to the trial court that the Maine Constitution provides more protection than the federal constitution and indeed cited the *Navarette* majority opinion in support of his motion to suppress. *See State v. Thornton*, 485 A.2d 952, 952-53 (Me. 1984) (declining to review an argument based on a provision of the Maine Constitution when the appellant failed to raise the issue to the court ruling on his motion to suppress and review was not necessary "to prevent a manifest miscarriage of justice or to correct a lower court's overstepping of its jurisdictional bounds"). Wilcox thereby waived the argument that he now asserts on appeal. *See State v. Reynolds*, 2018 ME 124, ¶ 28, 193 A.3d 168. We therefore address only his arguments challenging the trial court's application of federal constitutional law.

6

## A.     Investigatory Seizure of Wilcox

[¶10]  Wilcox first argues that he was unlawfully seized before the officer conversed with him and observed his speech because the officer directed him to stop, keep his hands out of his pockets, step toward the officer, and sit on the rear bumper.  Wilcox argues that the officer did not have reasonable articulable suspicion to seize him at that time because the anonymous tip lacked sufficient indicia of reliability, particularly on the issue of intoxication.

[¶11]  "A seizure of the person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen such that he is not free to walk away."  *State v. White*, 2013 ME 66, ¶ 11, 70 A.3d 1226 (quotation marks omitted).  As the State conceded at oral argument, the officer restrained Wilcox's liberty through a show of authority by ordering him to remove his hands from his pockets, stop, come toward the officer, and sit on the rear of his vehicle's trunk.  *See White*, 2013 ME 66, ¶ 11, 70 A.3d 1226; *see also State v. Patterson*, 2005 ME 26, ¶ 14, 868 A.2d 188 ("[A] reasonable person would not feel free to disobey an order from a police officer . . . .").  The trial court erred in concluding that there was no seizure at that time.  The question, then, is whether the court's findings nonetheless

demonstrate that the seizure was lawful, because of either safety concerns or a suspicion of a violation of law.

[¶12] "Brief investigatory detentions are justified when they are based on specific and articulable facts, and can be solely for safety concerns as part of the community caretaking function[] of police officers, which includes investigat[ing] vehicle accidents in which there is no claim of criminal liability." *State v. Bragg*, 2012 ME 102, ¶ 10, 48 A.3d 769 (quotation marks omitted). "Safety reasons alone can be sufficient if they are based upon specific and articulable facts." *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989) (quotation marks omitted).

[¶13] Brief investigatory detentions are also acceptable if they are based on specific facts that give rise to a reasonable, articulable suspicion that either criminal conduct or a civil violation "has occurred, is occurring, or is about to occur." *State v. Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984. "The suspicion need only be more than speculation or an unsubstantiated hunch." *State v. LaForge,* 2012 ME 65, ¶ 10, 43 A.3d 961 (quotation marks omitted). "[A] tip—even an anonymous one—may be reliable if the information is corroborated by the officer." *State v. Vaughan,* 2009 ME 63, ¶ 12, 974 A.2d 930.

8

[¶14]   Because the officer had confirmed that the caller accurately identified the type of vehicle, its color, its location, and its involvement in a recent collision, it was reasonable for the officer to infer that the caller had observed the collision that resulted in damage to Wilcox's car and the car's progress to the convenience store.   Based on the tip and the officer's observations, it was then reasonable for the officer to have Wilcox sit on the rear bumper to see if he was safe or required medical attention.[5]   The record supports the trial court's finding that the officer intended to ascertain Wilcox's safety and well-being; the evidence shows that the officer asked Wilcox what had happened and where, followed quickly by an inquiry into whether Wilcox was injured and needed an ambulance.   Such an investigation of a reported accident can be as much a part of an officer's role as a community caretaker, *see Bragg*, 2012 ME 102, ¶ 10, 48 A.3d 769; *Pinkham*, 565 A.2d at 319, as it is

---

[5]   Wilcox, citing *State v. Sasso*, 2016 ME 95, ¶ 20, 143 A.3d 124, argues that the State should be precluded from raising this justification for the seizure because it did not raise the argument to the trial court and the court did not rule on the question.  Unlike in *Sasso*, however, the trial court here *did* find that the officer interacted with Wilcox to confirm his well-being after an accident, and indeed stated that "it might have been a dereliction of duty if [the officer] did not" investigate upon discovering the damaged vehicle in the parking lot of the convenience store when acting on the anonymous tip.  The record supports the court's finding that the officer was "essentially asking Mr. Wilcox whether he was okay and what happened" when he first approached Wilcox.  *Cf. id.* ("Because the State did not argue that the malfunctioning brake light constituted a crime and did not offer or rely on the motor vehicle inspection regulations, this record would not support a finding that the officer had an objectively reasonable, articulable suspicion that a crime or traffic infraction was occurring." (footnote omitted)).

central to an officer's task of ascertaining whether criminal conduct has occurred, is occurring, or is about to occur, *see State v. Swett*, 1998 ME 76, ¶¶ 2, 4, 709 A.2d 729. The court thus found facts demonstrating a legitimate basis for the officer to seize Wilcox for investigatory questioning. We next consider the constitutionality of the officer's administration of field sobriety tests.

## B. Field Sobriety Testing

[¶15]   To determine whether the field sobriety testing was constitutionally sound, we consider (1) whether the testing constituted a warrantless search for which consent was required and (2) if not, whether the officer had reasonable articulable suspicion of intoxication to conduct the testing as part of a limited investigatory seizure.

### 1. Field Sobriety Testing as a Search

[¶16]  Wilcox argues that the officer should have asked for Wilcox's consent to field sobriety testing because a field sobriety test constitutes a search for which a warrant is required unless an exception to the warrant requirement—such as the procurement of consent[6]—applies. We have held

---

[6] "For the consent exception to the warrant requirement to apply, [t]he State must prove by a preponderance of the evidence that consent was objectively manifested by word or gesture and was freely and voluntarily given." *State v. Croteau*, 2022 ME 22, ¶ 21, 272 A.3d 286 (quotation marks omitted).

10

that a brief detention of a driver to "[s]ubject[] the driver to field sobriety tests," *Sylvain*, 2003 ME 5, ¶ 18, 814 A.2d 984, is allowed if an officer has "a reasonable articulable suspicion of impairment," *State v. McPartland*, 2012 ME 12, ¶ 8, 36 A.3d 881.  The intrusion on a person occasioned by field sobriety testing does not amount to an arrest for which probable cause is required, largely because "[t]he performance of a couple of quick, simple physical coordination tests is not particularly onerous, offensive or restrictive."  *State v. Little*, 468 A.2d 615, 617 (Me. 1983).  We have consistently regarded such testing as an extension of an investigatory stop or detention.  *See McPartland*, 2012 ME 12, ¶ 8, 36 A.3d 881.

[¶17]  A handful of other jurisdictions have held that field sobriety testing is a search, after determining that a person has an expectation of privacy in undertaking physical tasks that are not in the ordinary course of the person's conduct.[7]  We have already weighed the governmental and personal privacy interests at stake, however, in deciding that a reasonable articulable

---

[7]  *See, e.g.*, *State v. Nagel*, 880 P.2d 451, 455-56 (Or. 1994) (holding that field sobriety tests constitute a search for which, absent a warrant, probable cause is required); *People v. Carlson*, 677 P.2d 310, 316-18 (Colo. 1984) (same), *overruled in part on other grounds by People v. Chavez-Barragan*, 379 P.3d 330, 338 (Colo. 2016); *Blasi v. State*, 893 A.2d 1152, 1164, 1167-68 (Md. Ct. Spec. App. 2006) (holding that field sobriety tests constitute a search for which reasonable articulable suspicion—not probable cause—is required); *Hulse v. State, Dep't of Justice, Motor Vehicle Div.*, 961 P.2d 75, 85-87 (Mont. 1998) (holding that field sobriety tests constitute a search for which particularized suspicion—not probable cause—is required).

suspicion—not probable cause—is required to seize a person for field sobriety testing:

> The reasonableness in general of the field sobriety tests is measured by balancing the level of intrusion on individual privacy against the particular law enforcement interests which would be served by permitting it on less than probable cause. The law enforcement interest that the tests serve is to help a police officer assess promptly the likelihood that a driver is intoxicated and to provide [the officer] with a reliable basis for making an arrest . . . , thereby preventing the driver from potentially killing or maiming [the driver] or others. To require probable cause for arrest before the tests could be administered would defeat their very purpose. The State's interest in conducting field sobriety tests on less than probable cause, therefore, substantially outweighs the resultant intrusion on individual privacy, which is slight indeed. Hence, as a general rule, the procedure is reasonable.

*Little*, 468 A.2d at 617 (citations omitted); *cf. State v. Superior Ct.*, 718 P.2d 171, 175-76 (Ariz. 1986) (holding that although field sobriety testing is a search, only a reasonable articulable suspicion, and not probable cause, is required). We therefore conclude that the field sobriety testing of Wilcox was not a search but rather part of a limited investigatory seizure. *See Little*, 468 A.2d at 617. Only a reasonable articulable suspicion of safety concerns was required to begin the limited seizure and then, after a brief investigation, only a reasonable articulable suspicion of intoxication was required to conduct field sobriety testing. *See id*.

### 2. Reasonable Articulable Suspicion to Administer Field Sobriety Tests

[¶18]  The standard of reasonable articulable suspicion "requires less than probable cause that a crime was being committed, but more than speculation or an unsubstantiated hunch."  *State v. Brown*, 675 A.2d 504, 505 (Me. 1996) (quotation marks omitted).  An anonymous tip can form the basis of a reasonable articulable suspicion of criminal activity.  *See State v. Littlefield*, 677 A.2d 1055, 1057 (Me. 1996).  Courts will ordinarily consider, in determining whether gathered information that began with an anonymous tip gave rise to a reasonable articulable suspicion of wrongdoing,

- the extent and specificity of predictive detail regarding future criminal activity contained in the tip;

- the extent to which the predictive detail contained in the tip involved information that could be supplied only by a person with knowledge of the criminal activity alleged, rather than information available more generally or to the public at large; and

- the extent to which the police were able to confirm the accuracy of the predictive detail in the tip through their own observation or independently obtained, reliable information.

*State v. Barclift*, 2022 ME 50, ¶ 18, 282 A.3d 607.

[¶19]  The focus in this matter is not on the anonymous caller's prediction of criminal activity but on the corroboration and confirmation of the details

provided in the anonymous tip. *See id.*; *State v. Lovell*, 2022 ME 49, ¶ 17, 281 A.3d 651. "[C]orroboration can consist of the officer verifying details such as the physical description and location of the suspect and does not require that an officer observe illegal behavior." *Lovell*, 2022 ME 49, ¶ 17, 281 A.3d 651 (quotation marks omitted).

[¶20]  Here, the caller shared information beyond a description of the vehicle and an instance of irregular driving. *Cf. Navarette v. California*, 572 U.S. 393, 399 (2014) (holding that a report of an identifiable car running another car off the road was sufficient to generate a reasonable articulable suspicion of intoxicated driving). Specifically, the caller indicated that a brown Honda car had collided with an object, that the car was now at a specific convenience store, and that the caller thought the driver was intoxicated. *Cf. Florida v. J.L.*, 529 U.S. 266, 268, 271-72 (2000) (holding that an anonymous tip lacked sufficient indicia of reliability when the caller merely stated that a "young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun").

[¶21]  This case is distinct from the situation we recently addressed in *Barclift*, where we held that law enforcement lacked reasonable articulable suspicion to stop a traveler because there was no corroborating information for the illegal activities asserted by the anonymous tip. 2022 ME 50, ¶¶ 3-5, 23-26,

282 A.3d 607. The anonymous tip there indicated that a rap artist regularly purchased tickets, using an alias, to travel an identified bus route from New York to Maine; carried with him large quantities of drugs in a backpack; and usually carried a firearm. *Id.* ¶¶ 3, 25 & n.15. The only corroborative information the police obtained was that a rap artist with a criminal history regularly traveled by bus between New York and Maine—information that was insufficient to establish a reasonable articulable suspicion of wrongdoing. *Id.* ¶¶ 4, 23-26 & nn.6, 15, 17.

[¶22] Here, upon arriving at the convenience store specifically identified by the anonymous caller, the officer immediately observed a situation that confirmed most of the information in the anonymous tip: he found a vehicle fitting the caller's description at the specified convenience store with significant damage to the vehicle and a man outside the vehicle examining the damage. The officer then confirmed a suspicion of intoxication upon questioning the man, who slurred his speech while responding. An anonymous tip combined with observed circumstances can give rise to reasonable articulable suspicion. *Compare State v. Caron*, 534 A.2d 978, 979 (Me. 1987) (holding that the officer lacked reasonable articulable suspicion upon observing a "single, brief straddling of the center line of the undivided highway,

with no oncoming traffic in sight and no vehicles passing on the left, not constituting a violation of any traffic law"), *with State v. Lafond*, 2002 ME 124, ¶ 13, 802 A.2d 425 (upholding the admission of field sobriety and other test results when there was "a straddle plus an anonymous tip with sufficient specificity that the vehicle could be located").

[¶23]  Given the damage to the vehicle here, it was reasonable for the officer to infer that the vehicle had been involved in the reported collision, and in such circumstances, an investigatory seizure was reasonable.  *See State v. Dulac*, 600 A.2d 1121, 1123 (Me. 1992) (affirming a determination of reasonable articulable suspicion to stop a vehicle after it made an extremely wide turn, causing the vehicle to leave the paved surface of the road and pass onto snow).  These circumstances, combined with Wilcox's slurred speech when speaking with the officer, gave rise to reasonable articulable suspicion of intoxication.  *See State v. Moulton*, 1997 ME 228, ¶ 10, 704 A.2d 361 (listing slurred speech as one indicium of intoxication); *State v. Wood*, 662 A.2d 919, 921 (Me. 1995) (same).

[¶24]  The officer did not violate the United States Constitution by conducting field sobriety tests in these circumstances.  He could seize Wilcox for this limited purpose given the corroborated information from the

anonymous tip, including the location of the car, the damage to it, and Wilcox's slurring of his words when asked what happened, where it happened, and whether he needed medical attention. The court properly denied Wilcox's motion to suppress, and we affirm the resulting judgment of conviction.

The entry is:

Judgment affirmed.

---

Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Douglas E. Wilcox

Kathryn Slattery, District Attorney and Mark E. Squires, Asst. Dist. Atty. (orally), Prosecutorial District 1, Alfred, for appellee State of Maine

York County Unified Criminal Docket docket number CR-2020-22225
FOR CLERK REFERENCE ONLY