MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 29
Docket:        Ken-23-12
Argued:        October 5, 2023
Decided:       April 18, 2024

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

STATE OF MAINE

v.

ROGER OUELLETTE

STANFILL, C.J.

[¶1]  Roger Ouellette appeals from a judgment of conviction of OUI entered in the trial court (Kennebec County, *Cashman, J.*) upon a conditional guilty plea.  Ouellette entered the plea after the court (*Stokes, J.*) denied his motion to suppress evidence the police obtained after stopping him in his driveway.  On appeal, Ouellette raises an argument he did not present to the suppression court: that the stop was an unreasonable seizure under the Fourth Amendment to the United States Constitution because it occurred within the curtilage of his home without a warrant and without any applicable exception to the warrant requirement.  We affirm the judgment because we conclude that the court's failure to grant Ouellette's motion on that ground did

---

* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

2

not constitute obvious error and because the court did not err in determining that the stop was otherwise justified.

## I. BACKGROUND

[¶2] The suppression court found the following facts, which are supported by competent evidence in the record and which we view in the light most favorable to the court's decision. *See State v. McNaughton*, 2017 ME 173, ¶¶ 10, 28, 168 A.3d 807; *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003. During the evening of February 1, 2020, a police officer was patrolling Route 126 in Litchfield, looking for impaired drivers coming from a local restaurant that he had heard was overserving alcohol. As the officer was heading west toward the restaurant, he observed a vehicle driving east toward him. The vehicle crossed over the center yellow double line and traveled partially in the officer's lane, enough so that the officer needed to move over in his lane to pass the vehicle safely. The officer considered that the driver's operation was a violation of 29-A M.R.S. § 2051(1) (2023).

[¶3] The officer continued driving west until he lost sight of the vehicle's lights and then turned his cruiser around. After heading east for a short distance, he regained sight of the vehicle and saw that it was parked, with its lights still on, near a building that looked like a residence. The officer pulled

over and watched the vehicle for a few minutes to see if it would move. He then continued driving east, past the vehicle, and pulled over at a side road and waited again. After about ten minutes, he drove west past the vehicle again, which was still parked with its lights on, and then turned around, parked, and continued to watch.

[¶4] At some point, the officer saw the vehicle drive quickly across Route 126 onto an icy "camp road" that was directly across from where the vehicle had been parked. The officer followed the vehicle onto that road, and he thought that it was driving faster than he would have expected, given the conditions. He saw the vehicle turn into a driveway, and he then saw the driver's side door open and the driver, Ouellette, get out and slip on the icy surface. He pulled into the driveway behind Ouellette's vehicle, activated his cruiser's blue emergency lights, and then "approached [Ouellette] in the driveway and questioned him."

[¶5] Based on evidence obtained as a result of the stop, the State charged Ouellette by complaint with OUI (Class D), 29-A M.R.S. § 2411(1-A)(A), (5)(A)(3)(a)(i) (2023). After pleading not guilty, Ouellette filed a motion to suppress evidence, arguing only that the officer lacked reasonable articulable suspicion of wrongdoing sufficient to justify the stop under the United States

and Maine Constitutions. *See State v. Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984 (describing the objectively reasonable articulable suspicion that must exist to justify a brief, warrantless, investigatory vehicle stop).

[¶6] The court held an evidentiary hearing on Ouellette's motion. During the hearing, the parties and the court discussed, at some length, the legal basis for Ouellette's motion. Ouellette ultimately stated that his argument was "twofold": "the lack of [reasonable articulable suspicion], but it's also a lack of probable cause for . . . this seizure . . . [, which] turns into a de facto arrest with . . . how the conversation unfolds." The parties did not present oral closing arguments; instead, they agreed to submit written memoranda after the hearing.

[¶7] In his memorandum, Ouellette first argued that the officer lacked reasonable articulable suspicion of either OUI or a traffic violation to support the stop. He then argued that the stop was not one that could be justified *absent* reasonable articulable suspicion because the severity of the officer's "interference with [his] liberty interests" outweighed the "gravity of the public interest served by the investigatory stop." In making this second argument, Ouellette cited a line of cases in which we and the United States Supreme Court have held that "that *even in the absence of reasonable articulable suspicion*, a

seizure for information-seeking purposes" may still be reasonable for Fourth Amendment purposes. *State v. LaPlante*, 2011 ME 85, ¶ 8, 26 A.3d 337 (emphasis added); *see State v. Whitney*, 2012 ME 105, ¶ 10, 54 A.3d 1284 ("[S]pecial law enforcement concerns will sometimes justify highway stops without individualized suspicion." (quoting *Illinois v. Lidster*, 540 U.S. 419, 424 (2004))); *Lidster*, 540 U.S. at 424-27. Ouellette did not argue at any time in the trial court that the seizure was unlawful even if it *was* supported by reasonable articulable suspicion or probable cause because it had occurred within the curtilage of his home without a warrant or an exception to the warrant requirement.

[¶8] The court denied Ouellette's motion in a written order. The court concluded that no constitutional violation had occurred because the stop was supported by reasonable articulable suspicion that Ouellette had violated the motor vehicle statute requiring vehicles to be "operated as nearly as practical entirely within a single lane" on a divided, two-lane public way, 29-A M.R.S. § 2051(1). Addressing Ouellette's second argument, the court determined that it therefore did not need to examine whether the stop would have been justified even absent reasonable articulable suspicion of any wrongdoing. The court did not make findings relevant to whether the stop was within the curtilage of the

6

home or to any exceptions to the warrant requirement, and Ouellette did not move for further findings. *Cf.* M.R.U. Crim. P. 41A(d); *State v. Sasso*, 2016 ME 95, ¶¶ 18-19, 143 A.3d 124.

[¶9]  Ouellette entered a conditional plea of guilty, and the court (*Cashman, J.*) entered a judgment of conviction and imposed a sentence (stayed pending appeal) of twenty days in jail, a $500 fine, and a license suspension. Ouellette appeals.  *See* M.R.U. Crim. P. 11(a)(2); 15 M.R.S. § 2115 (2023).

## II.  DISCUSSION

[¶10]  Before us, Ouellette argues that the officer's seizure of him was unlawful under the Fourth Amendment to the United States Constitution because it took place in an area that was part of his home's curtilage without a warrant and that no exception to the warrant requirement applied.[1]  The State argues that Ouellette's argument is unpreserved, that the trial court's failure to grant Ouellette's motion on these grounds did not amount to obvious error, and that the court correctly concluded that the stop was supported by reasonable articulable suspicion.

---

[1]  Ouellette relies on only the Fourth Amendment; he has not developed a specific argument that the Maine Constitution requires suppression of the evidence in this case.  *See State v. Wai Chan*, 2020 ME 91, ¶ 18 n.10, 236 A.3d 471.

## A.     Standards of Review

[¶11]  "We will uphold the court's denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision."  *State v. Wai Chan*, 2020 ME 91, ¶ 13, 236 A.3d 471 (quotation marks omitted). Generally, "we review the trial court's factual findings for clear error and its legal conclusions de novo."  *Id.*  Absent a motion for further findings, we assume the court found the facts necessary to support its judgment as long as the record contains evidence that would support those assumed findings.  *Sasso*, 2016 ME 95, ¶ 19, 143 A.3d 124; *see State v. Cefalo*, 396 A.2d 233, 239 n.12 (Me. 1979); M.R.U. Crim. P. 41A(d).

[¶12]  "An issue is preserved for appellate review if there is a sufficient basis in the record to alert the trial court and the opposing party to the existence of the issue."  *State v. Reeves*, 2022 ME 10, ¶ 35, 268 A.3d 281.  "[T]he suppression movant must articulate in his motion with sufficient particularity the specific reason on which he bases his claim that the seizure without warrant was illegal, so that the court will recognize the issue to be decided."[2]  *State v. Desjardins*, 401 A.2d 165, 169 (Me. 1979); *see* M.R.U. Crim. P. 41A(a), (c).  Issues that are unpreserved for appeal are reviewed only for obvious error, *State v.*

---

[2] Ouellette acknowledges that his preservation-related "task" was, in his words, "to alert the State to the factual record it might need to create to rebut a suppression argument."

8

*True*, 2017 ME 2, ¶ 15 & n.6, 153 A.3d 106; *see* M.R.U. Crim. P. 52(b), which is an error that "is plain, affected substantial rights, and seriously affected the fairness and integrity or public reputation of judicial proceedings," *Reeves*, 2022 ME 10, ¶ 37, 268 A.3d 281 (alterations and quotation marks omitted). "An error cannot be plain unless the error is so clear under current law that the trial judge and prosecutor were derelict in countenancing it." *Id.* (alteration and quotation marks omitted).

B.    **Curtilage**

1.    **Preservation**

[¶13]  As we have discussed, the central argument that Ouellette raises on appeal is that he was seized within the curtilage of his home, an area afforded special protection under the Fourth Amendment, and that therefore a warrant supported by probable cause (or an exception to the warrant requirement) was required for the intrusion to be lawful.  Ouellette did not discuss any of the critical components of this argument at any time in the trial court, nor did he move for further findings.  The trial court was therefore never asked to make findings relevant to the issues Ouellette now contends are dispositive—for example, findings relevant to determining whether the seizure occurred within the home's curtilage or to whether exigent circumstances or

some other exception to the warrant requirement existed. *See, e.g.*, *State v. Boyington*, 1998 ME 163, ¶ 7, 714 A.2d 141 (discussing the factors relevant to the highly fact-specific determination of whether an area constitutes part of a home's curtilage); *State v. Arndt*, 2016 ME 31, ¶¶ 2-3, 9-11, 133 A.3d 587 (affirming a suppression court's determination that exigent circumstances existed based on the specific facts of the case, as described in the suppression court's findings).

[¶14]  We cannot agree with Ouellette's contention that the second argument presented to the suppression court in his post-hearing brief preserved the argument he raises on appeal.  He argued to the suppression court that this case did not belong in the category of factual scenarios in which a warrantless, information-seeking stop is permissible even *absent* reasonable articulable suspicion of wrongdoing or a safety threat.  *See, e.g.*, *Whitney*, 2012 ME 105, ¶ 10, 54 A.3d 1284.  Having concluded that the officer *did* have reasonable articulable suspicion justifying the stop, the court explained that there was no reason to address whether the stop could have been permissible even absent that suspicion. Raising that argument did nothing to alert the State or the court of the existence of the issue the Ouellette raises now: that the seizure occurred within the curtilage of Ouellette's home and was therefore

unconstitutional based on the special privacy protections afforded to the home and its curtilage. *See, e.g.*, *Reeves*, 2022 ME 10, ¶¶ 35-36, 268 A.3d 281. The argument raised on appeal is unpreserved, and we therefore review it for obvious error.[3] *See True*, 2017 ME 2, ¶ 15 & n.6, 153 A.3d 106; M.R.U. Crim. P. 52(b); *see also, e.g.*, *United States v. Lewis*, 62 F.4th 733, 741 n.1 (2d Cir. 2023); *State v. Eklund*, 2000 ME 175, ¶ 7 n.2, 760 A.2d 622; *State v. Cumming*, 634 A.2d 953, 956 (Me. 1993); *State v. Herbest*, 551 A.2d 442, 444 (Me. 1988); *State v. Clark*, 483 A.2d 1221, 1224 n.1, 1226 (Me. 1984); *State v. Beathem*, 482 A.2d 860, 862 (Me. 1984); *Desjardins*, 401 A.2d at 169.

### 2. Merits

[¶15] "It is beyond question that a person's home, and the rights of an individual within that home, have a special place in our jurisprudence." *State v. Boilard*, 488 A.2d 1380, 1388 (Me. 1985). "[T]he ultimate touchstone of the Fourth Amendment is reasonableness," and "searches and seizures inside a home without a warrant are presumptively unreasonable." *State v. Akers*,

---

[3] We agree with Ouellette that his failure to preserve the issue did not constitute an affirmative waiver and therefore his argument is subject to appellate review. *See, e.g.*, *State v. True*, 2017 ME 2, ¶ 15, 153 A.3d 106 ("[W]hen fundamental constitutional rights are at stake, every reasonable presumption is made against a finding of waiver." (quotation marks omitted)); *cf. State v. Ford*, 2013 ME 96, ¶ 15, 82 A.3d 75 (explaining that "obvious error review is precluded when a defendant expressly waives a jury instruction" (quotation marks omitted)). This case is unlike *State v. Wilcox*, 2023 ME 10, ¶ 9 n.4, 288 A.3d 1200, in which the appellant advanced a position on appeal that was directly contrary to the position taken before the trial court.

2021 ME 43, ¶ 26, 259 A.3d 127 (quotation marks omitted). "The curtilage—that is, the 'area adjacent to the home and to which the activity of home life extends'—is considered part of a person's home and enjoys the same protection against unreasonable searches as the home itself." *United States v. Alexander*, 888 F.3d 628, 631 (2d Cir. 2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 7 (2013)); *see State v. Trusiani*, 2004 ME 107, ¶ 10, 854 A.2d 860 ("[T]he Fourth Amendment protects the curtilage of a house from unreasonable searches and seizures."). Therefore, a search or seizure within the curtilage "that occurs without a warrant based on probable cause or an exception to the warrant requirement violates the Fourth Amendment." *Alexander*, 888 F.3d at 631. "By contrast, that portion of private property that extends outside a home's curtilage—what the caselaw terms an open field—is beyond the purview of the Fourth Amendment, and can be warrantlessly and suspicionlessly searched without constitutional impediment." *Id.* (quotation marks omitted); *see Boyington*, 1998 ME 163, ¶ 6, 714 A.2d 141 ("[O]ne's claim of protection under the Fourth Amendment depends not upon a property right in the invaded place . . . but rather upon whether the person has a legitimate expectation of privacy in the invaded place." (alteration and quotation marks omitted)).

12

[¶16] Here, a seizure within the meaning of the Fourth Amendment undeniably occurred when the officer activated his cruiser's emergency lights and detained Ouellette to question him.[4] *See State v. Wilcox*, 2023 ME 10, ¶ 11, 288 A.3d 1200. Therefore, the next question in our analysis is whether the seizure occurred within the curtilage of Ouellette's home.

[¶17] Before us, Ouellette bases his argument on the assumption that a driveway is always within the curtilage of the home. To the contrary, "the reach of the curtilage of a home depends on the facts of each case." *Boyington*, 1998 ME 163, ¶ 7, 714 A.2d 141 (quotation marks omitted); *see United States v. May-Shaw*, 955 F.3d 563, 570-71 (6th Cir. 2020) ("[E]very curtilage determination is distinctive and stands or falls on its own unique set of facts." (quotation marks omitted)); *Commonwealth v. Wittey*, 210 N.E.3d 355, 370 (Mass. 2023) ("Applying the [relevant legal anlysis] to a driveway may yield different results based on the circumstances present in each case."). Relying on *United States v. Dunn*, 480 U.S. 294, 301 (1987), we have outlined four factors

---

[4] The State does not contend otherwise. Its argument that no warrant or exception was required because administering field sobriety tests does not constitute a search or an arrest for Fourth Amendment purposes is misplaced in this context—an investigatory stop constitutes a seizure, *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and the warrant requirement applies to seizures within the home or curtilage, *see United States v. Perea-Rey*, 680 F.3d 1179, 1188–89 (9th Cir. 2012); *cf. Arizona v. Hicks*, 480 U.S. 321, 326-29 (1987).

that are relevant to determining whether an area constitutes part of a home's curtilage:

> (1) [the] proximity of [the] area claimed to be curtilage to the home; (2) whether [the] area claimed to be curtilage is included within an enclosure surrounding the home; (3) [the] nature of the uses to which the area is put; and (4) [the] steps taken by the resident to protect the area from observation by people passing by.

*Boyington*, 1998 ME 163, ¶ 7, 714 A.2d 141 (quotation marks omitted).

[¶18] Ordinarily, on appeal, a trial court's factual findings relevant to a determination regarding curtilage are reviewed for clear error, and its application of legal standards to those findings is reviewed de novo. *Trusiani*, 2004 ME 107, ¶ 9, 854 A.2d 860; *see State v. Reynoso-Hernandez*, 2003 ME 19, ¶¶ 10-12, 816 A.2d 826; *Ornelas v. United States*, 517 U.S. 690, 696-99 (1996). Here, our ability to conduct that review is impeded because the trial court did not analyze the issue, not having been asked to, and did not (intentionally or incidentally) make the relevant findings of historical fact. Moreover, Ouellette has not presented a developed, case-specific analysis of the curtilage issue in his brief; rather, his arguments proceed from the assumption that the seizure occurred within the curtilage of his home. We are not at liberty to make the relevant factual findings on our own. *Harvey v. Dow*, 2011 ME 4, ¶ 8, 11 A.3d 303 ("It is not our place, as an appellate court, to make findings of fact.").

14

[¶19] Upon reviewing the entire suppression record, we cannot conclude that it was plain error for the trial court to fail to determine, sua sponte, that the investigatory stop in the driveway occurred in a place "so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection," *Dunn*, 480 U.S. at 301 (quotation marks omitted), or in a place that "harbors the intimate activities associated with the sanctity of a home and the privacies of life," *Boyington*, 1998 ME 163, ¶ 8, 714 A.2d 141 (quotation marks omitted). *See Reeves*, 2022 ME 10, ¶ 37, 268 A.3d 281 (describing the nature of plain error); *Lewis*, 62 F.4th at 741 n.1 (reviewing an unpreserved curtilage argument for plain error and noting that "a curtilage analysis is fact-specific and often requires the defendant to bring forward facts establishing that his or her curtilage extended to a given area—a record that [the defendant] failed to develop"); *see also United States v. Vasquez*, No. 22-1294, 2024 WL 34132, at *2-3 (10th Cir. Jan. 3, 2024) (concluding, based on the particular facts of the case, that a driveway was not curtilage); *United States v. Stephen*, 823 F. App'x 751, 754-55 (11th Cir. 2020) (same); *Wittey*, 210 N.E.3d at 369-74 (providing a comprehensive curtilage analysis, concluding that the driveway at issue was not curtilage, and collecting cases and determining that the "majority of Federal circuit cases discussing a

driveway curtilage question have found that the area at issue was not part of the curtilage of the home"). We conclude that it was not obvious error for the trial court not to grant Ouellette's motion to suppress based on a curtilage argument that was neither made nor developed.

## C.      Reasonable Articulable Suspicion

[¶20]  The remaining question is whether the officer otherwise had a basis sufficient under the Fourth Amendment to stop Ouellette. *See, e.g.*, *State v. Barclift*, 2022 ME 50, ¶ 8, 282 A.3d 607.  We agree with the State that the trial court did not err when it determined that the stop was justified.  "In order to support a brief investigatory stop of a motor vehicle, . . . a police officer must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur.  The officer's suspicion that any of these circumstances exist must be objectively reasonable in the totality of the circumstances." *Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984 (footnote and quotation marks omitted).

[¶21]  Title 29-A M.R.S. § 2051(1) provides that "[w]hen a public way has been divided into 2 or more clearly marked lanes for traffic, . . . [a] vehicle must be operated as nearly as practical entirely within a single lane."  The court found, with support from the evidentiary record, that the officer had witnessed

Ouellette cross the center line and travel partially in the lane of oncoming traffic such that the officer had to move to the side to pass by Ouellette's vehicle safely. This observation was sufficient to generate an objectively reasonable suspicion that a civil violation or a threat to public safety had occurred.[5]  *See id.*; *Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984; *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989) ("Safety reasons alone can be sufficient if they are based upon specific and articulable facts." (quotation marks omitted)).

The entry is:

Judgment affirmed.

---

Jamesa J. Drake, Esq. (orally), Drake Law LLC, Auburn, for appellant Roger Ouellette

Jacob Demosthenes, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2020-1445
FOR CLERK REFERENCE ONLY

---

[5] Before the trial court, Ouellette relied on *State v. Caron*, in which we concluded that "[a] vehicle's brief, one time straddling of the center line of an undivided highway is a common occurrence and, in the absence of oncoming or passing traffic, without erratic operation or other unusual circumstances, does not justify an intrusive stop by a police officer." 534 A.2d 978, 979 (Me. 1987).  The trial court did not err in distinguishing *Caron* on the grounds that the circumstances in *Caron*, unlike in this case, involved "no oncoming traffic in sight" and no "violation of any traffic law." *Id.*